UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

|  |  |  |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| | ) | |
| v. | ) | CRIMINAL NO. 21-cr-10104-PBS |
| | ) | |
| VLADISLAV KLYUSHIN | ) | |
| Defendant | ) | |
| | ) | |

## DEFENDANT VLADISLAV KLYUSHIN'S MOTION TO DISMISS COUNT IV AND TO PARTIALLY DISMISS COUNT I

Now comes the defendant Vladislav Klyushin, by and through undersigned counsel, and hereby respectfully requests this Honorable Court to dismiss Count IV and to partially dismiss Count I of the Indictment.

**COUNT FOUR FAILS TO CHARGE A COGNIZABLE STOCK FRAUD CRIME BECAUSE IT DOES NOT AND CANNOT ALLEGE THAT KLYUSHIN, A CORPORATE OUTSIDER, OWED OR BREACHED A FIDUCIARY OR SIMILAR DUTY OF DISCLOSURE TO EITHER MARKET PARTICIPANTS OR ANY SOURCE OF INFORMATION ASSERTEDLY STOLEN BY HACKING**

**A.    STATEMENT**

Having plausibly accused Klyushin of computer and wire fraud, the government piles on by dressing up the same underlying hack-and-trade scheme in a "novel"[1] theory of stock fraud: namely, that a band of corporate outsiders engaged in "deception" simpliciter – criminally violating federal securities law – by hacking into filing agent computers, illicitly harvesting

---

[1] *SEC v. Dorozhko*, 606 F. Supp. 2d 321, 324 (SDNY 2008) (*Dorozhko I*), *vacated*, 574 F.3d 42 (CA2 2009) (*Dorozhko II*). All internal citations, alterations, quotation marks and other punctuation are omitted unless otherwise noted.

employee login credentials and using them to steal confidential business information for trading advantage.

Never recognized by the Supreme Court or First Circuit in almost 90 years of securities law experience, this belt-and-suspenders approach belies the "essential component" and "entire construct" at the "heart" of "insider trading regulation": a "breach of a fiduciary" or similar "duty to disclose or abstain that coincides with a [stock] transaction."[2]

If adopted, the government's envelope-pushing position would needlessly prolong and complicate Klyushin's trial, radically expanding the scope of § 10(b) liability by elevating every larceny by false pretenses that somehow touches securities into criminal insider trading. To avoid these intolerable results, the Court should reject the government's test case and dismiss Count Four (plus Count One's corresponding securities fraud object) for failure to allege a viable stock fraud offense.

**B.     LEGAL BACKGROUND**

As relevant here, § 10(b) of the 1934 Securities Exchange Act "proscribes (1) using any deceptive device (2) in connection with the purchase or sale of securities, in contravention of rules prescribed by the [Securities and Exchange] Commission."[3] Rule 10b-5, prescribed by the SEC in turn, outlaws, among other things, "mak[ing] untrue statements of material facts" or "omit[ting] to state material facts" in connection with "the purchase and sale of securities."[4]

---

[2] *Ibid.* 338-41.

[3] *U.S. v. O'Hagan*, 521 U.S. 642, 651 (1997).

[4] Indictment ¶ 49.

2

While intended to "insure honest securities markets and thereby promote investor confidence,"[5] these provisions are not "a broad federal remedy for all fraud"[6] or a "blanket prohibition on illicit schemes that somehow involve securities transactions."[7] They do "*not* reach all structural disparities in information that result in securities transactions"[8] and "must not be construed so broadly as to convert every common-law fraud that happens to involve securities into a [§ 10(b)] violation."[9] In particular, the Supreme Court has long emphasized that a general "duty to disclose under § 10(b) does not arise from the mere possession of nonpublic market information,"[10] however acquired.

Over 88 years of interpretation since the Act's passage, the Court has "established that there are two complementary theories of insider trading liability"[11] under § 10(b) and accompanying Rule 10b-5. Under the "**traditional**" or "**classical**" theory, a "corporate insider" – permanent or temporary – "trades in the securities" of their corporation on the basis of "material, nonpublic information."[12] Such trading counts as "deceptive" under § 10(b) because a "relationship of trust and confidence exists" between a corporation's shareholders and insiders

---

[5] *O'Hagan*, 521 U.S. at 658.

[6] *Marine Bank v. Weaver*, 455 U.S. 551, 556 (1982).

[7] *Dorozhko*, 606 F. Supp. 2d at 335.

[8] *Ibid.* (emphasis supplied).

[9] *SEC v. Zandford*, 535 U.S. 813, 820 (2002).

[10] *Chiarella v. US*, 445 U.S. 222, 229, 235 (1980).

[11] Donna M. Nagy, *Insider Trading and the Gradual Demise of Fiduciary Principles*, 94 Iowa L. Rev. 1315, 1316 (May 2009) (Nagy).

[12] *O'Hagan*, 521 U.S. at 651-52.

who obtain "confidential information by reason of their [corporate] position."[13] And that relationship gives rise to a "duty to disclose" or "abstain from trading" so as to prevent corporate insiders from taking unfair advantage of uninformed stockholders – the counterparties to a purchase or sale.[14]

Under the "**misappropriation**" theory, on the other hand, a malefactor "misappropriates confidential information for securities trading purposes, in breach of a duty owed to the [information's] source."[15] On that theory, the Court elaborated, a fiduciary's

> undisclosed, self-serving use of a principal's information to purchase or sell securities, in breach of a duty of loyalty and confidentiality, defrauds the principal of the exclusive use of that information. In lieu of premising liability on a fiduciary relationship between company insider and purchaser or seller of the company's stock, the misappropriation theory premises liability on a fiduciary-turned-trader's deception of those who entrusted him with access to confidential information.[16]

---

[13] *Ibid.* 652.

[14] *Ibid.*; *see Chiarella*, 445 U.S. at 228 ("one who fails to disclose material information prior to the consummation of a transaction commits fraud only when … under a duty to" disclose).

[15] *O'Hagan*, 521 U.S. at 652.

[16] *Ibid.*

At the "heart"[17] or "core"[18] of both established theories – insider trading's "essential component"[19] and "entire construct"[20] – is the "requirement"[21] of a "fiduciary"[22] relationship or similar duty of trust and confidence.[23] As the Supreme Court squarely put it: "The classical theory targets a corporate insider's breach of duty to shareholders with whom the insider transacts; the misappropriation theory [forbids] trading on the basis of nonpublic information by a corporate 'outsider' in breach of a duty owed not to a trading party, but to the [information's] source."[24]

In sum, breach of a fiduciary or similar duty serves as the uniform "basis" or "predicate[]" for stock fraud liability under Supreme Court and First Circuit precedent; absent a fiduciary or similar breach, there is no deception within § 10(b)'s meaning and thus no insider trading

---

[17] *Dorozhko I*, 606 F. Supp. 2d at 340.

[18] Nagy, 94 Iowa L. Rev. at 1316.

[19] *Dorozhko I*, 606 F. Supp. 2d at 338.

[20] *Ibid.* 340-41.

[21] *Ibid.* 341; Elizabeth A. Odian, SEC v. Dorozhko*'s Affirmative Misrepresentation Theory of Insider Trading: An Improper Means to a Proper End*, 94 Marq. L. Rev. 1313, 1313 (Summer 2011) (Odian).

[22] *Dorozhko I*, 606 F. Supp. 2d at 338, 340-41.

[23] *See*, *e.g.*, *SEC v. Rocklage*, 470 F.3d 1, 6 (CA1 2006) ("when the trading individual owes no fiduciary duty to the stockholders of the traded-in corporation, and he has not obtained the information from one who has breached such a duty, there can be no insider trading liability under the classical theory"); *U.S. v. Kanodia*, 943 F.3d 499, 506 (CA1 2019) ("Because the government prosecuted Kanodia on a misappropriation theory of insider trading, the jury needed to find that Kanodia breached a duty of trust and confidence owed to a corporate insider" who entrusted him with confidential information).

[24] *O'Hagan*, 521 U.S. at 652-53.

violation.[25] Stated simply, the high court has "explicit[ly] dictate[d] that fiduciary principles underlie the offense of insider trading"[26] – of *any* stripe.[27]

### C.     THE NOVEL AND INVALID STOCK FRAUD THEORY HERE

In the pending case, defendants are "true" corporate outsiders – not claimed to have "owed" or breached any fiduciary-type duty to either "market participants" or confidential information "source[s]"[28] – who allegedly hacked into filing agent computers, extracted employee login credentials and used them to steal material nonpublic information for trading advantage. Open and shut case, right?[29] Under controlling law, defendants may face prosecution for wire and computer fraud,[30] but not insider trading. No duty or breach, no securities fraud.

Well, not so fast. Not content with what binding precedent explicitly authorizes, the government resorts to unwarranted overkill by conjuring a whole "new" species of "insider,"[31]

---

[25] *Dorozhko I*, 606 F. Supp. 2d at 323-24, 330, 337-39.

[26] Nagy, 94 Iowa L. Rev. at 1319.

[27] *Ibid.* 1323-24 & n.35 (calling fiduciary-like relationship "essential" to "either" recognized Supreme Court stock fraud theory (classical and misappropriation)).

[28] *Dorozhko I*, 606 F. Supp. 2d at 336.

[29] *See* Odian, 94 Marq. L. Rev. at 1344 (confirming that "computer hacking does not fit within the contours of classical insider trading or the fraud on the source theory adopted by the Supreme Court in *O'Hagan*").

[30] *Dorozhko I*, 606 F. Supp. 2d at 323 & n.2 (recognizing that the "conduct alleged might violate the computer fraud statute, 18 USC § 1030(a)(4), and the mail and wire fraud statutes, 18 USC § 1341 *et seq.*"); *see also id.* 324 (finding "sufficient basis to conclude that Dorozhko's hack violated the Computer Fraud and Abuse Act" and "wire fraud statute"); Robert A. Prentice, *The Internet and Its Challenges for the Future of Insider Trading Regulation*, 12 Harv. J.L. & Tech. 263, 297-98 (1999) (failing "nontraditional" arguments, insider trading based on hacked information "would have to be punished … via mail fraud, wire fraud, simple theft, or other comparable statutes").

[31] Odian, 94 Marq. L. Rev. at 1313.

6

previously unknown in decades of Supreme Court and First Circuit securities practice. More precisely, the government appears to contend that defendants engaged in "deception" as commonly understood by remotely impersonating filing agent employees – the same conduct charged in counts One through Three – in connection with securities purchases and sales, also rendering them criminally liable for stock fraud. In essence, the government thus seems to suggest, any deceit involving stock – "any fraudulent scheme that contains the requisite nexus to a securities transaction"[32] – automatically violates § 10(b).

Courts and commentators have condemned this novel "hack-and-trade" theory as "greatly extend[ing] the reach of the SEC's policing power"[33] and lacking "doctrinal foundation."[34] After all, § 10(b) "deception" is a term of art glossed by the Supreme Court over some 90 years,[35] and it *consists of* – actually *resides in* – the existence and breach of a fiduciary-type duty.[36] Accordingly, because Klyushin owed no such duty to any information source – either the filing agents or their corporate clients – or "to those he transacted with in the market," he could not have breached one

---

[32] *Dorozhko I*, 606 F. Supp. 2d at 336.

[33] Odian, 94 Marq. L. Rev. at 1313.

[34] Nagy, 94 Iowa L. Rev. at 1316.

[35] *Dorozhko I*, 606 F. Supp. 2d at 330 n.8; *see Stoneridge Inv. Partners, LLC v. Scientific Atl., Inc.*, 552 U.S. 148, 162 (2008) ("Section 10(b) does not incorporate common-law fraud into federal law.")

[36] *Dorozhko I*, 606 F. Supp. 2d at, *e.g.*, 330 (Supreme Court cases interpreting § 10(b) have "established that a device, such as a scheme, is not 'deceptive' unless it involves breach of some duty of candid disclosure"); *accord*, *e.g.*, *id.* 330 n.8 (§ 10(b) deception "necessarily involve[s] the breach of a fiduciary or similar duty"); *id.* 330 (breaching a "fiduciary duty of disclosure is a required element of any 'deceptive' device under § 10(b)"); *see generally id.* 338-39; Nagy, 94 Iowa L. Rev. at 1360-61 (*O'Hagan* made clear that it is "the insider trader's breach of trust and loyalty" that "constitutes the fraud under Rule 10b-5").

7

"in connection with the purchase or sale of a security."[37] It follows that his alleged "'hacking and trading' does not amount to a violation of § 10(b) and Rule 10b-5."[38]

As one judge, quoting a scholarly article,[39] explained at some length:

> A … hacker who breaches the computer security walls of a large publicly held corporation and extracts nonpublic information may … trade and tip without running afoul of the insider trading rules. The … hacker may be liable for the conversion of nonpublic information under other laws, but the insider trading laws themselves appear not to prohibit the … hacker from trading or tipping on the basis of the stolen information. This is because there was no breach of a duty of loyalty to traders under the classic theory or to the source of the information under the misappropriation theory.[40]

By eliminating the crux of both § 10(b) deception and insider trading itself – the "requirement" of a fiduciary-type breach – the government's unorthodox "hack-and-trade" theory thus conflates theft and stock fraud, "undo[ing] decades of Supreme Court" and First Circuit "precedent" and "rewrit[ing] the law as it has developed."[41] Even given "parallel coinciding criminal conduct" that may "amount[] to wire" and computer fraud, "there can be no 'deception,' and therefore no liability under § 10(b), absent the existence and breach of a fiduciary" or comparable duty.[42] Contrary to the government's apparent supposition, "§ 10(b) does not reach all

---

[37] *Dorozhko I*, 606 F. Supp. 2d at 324.

[38] *Ibid.*

[39] *See* Kathleen Coles, *The Dilemma of the Remote Tippee*, 41 Gonz. L. Rev. 181, 221 (2005-06).

[40] *Dorozhko I*, 606 F. Supp. 2d at 341-42.

[41] *Ibid.* 323, 340-41, 343.

[42] *Ibid.* 338.

structural disparities in information that result in securities transactions, only those disparities obtained by dint" of a "fiduciary" or equivalent "breach."[43]

To our knowledge, only one stray court swims against the prevailing academic and judicial tide. In *Dorozkho II*,[44] a civil enforcement action, a panel of the Second Circuit Court of Appeals made the surprising and "unprecedented"[45] assertion that Supreme Court securities precedent, closely read, strictly requires a fiduciary-type relationship only in cases involving omission or nondisclosure – and, concomitantly, that it does not foreclose § 10(b) liability without one in cases of affirmative misrepresentation. (Remotely impersonating a filing agent employee would presumably or ostensibly fit the latter bill in the Second Circuit's view.) Twelve years later, in July 2021, a different panel of the same court summarily extended *Dorozkho II* to the criminal context in a single unreasoned sentence.[46] The Second Circuit's "approach"[47] is severely "flawed"[48] and should not prevail in the First – especially on the facts and circumstances presented here.

**D.   THE SECOND CIRCUIT'S PECULIAR TAKE ON SECURITIES FRAUD IS UNPRECEDENTED, UNSOUND AND UNCONSTITUTIONAL AS APPLIED IN THIS CASE**

This Court should reject the new species of stock fraud liability the Second Circuit invented in *Dorozkho II* and expanded in *Khalupsky*, holding it unfounded, illegitimate and unconstitutional

---

[43] *Ibid.* 335.

[44] 574 F.3d 42.

[45] Odian, 94 Marq. L. Rev. at 1313.

[46] *U.S. v. Khalupsky*, 5 F. 4th 279, 290 & n.30 (CA2).

[47] Odian, 94 Marq. L. Rev. at 1313.

[48] *Ibid.*; *see Dorozkho II*, 574 F.3d at 45 (conceding that imposing § 10(b) liability "against defendant – a corporate outsider who owed no fiduciary duties to the source of the information – is not based on either of the two generally accepted theories of insider trading").

as applied to Kluyushin – and dismissing Count Four, plus Count One's corresponding securities fraud object, in consequence.

**First**, the *Dorozkho II* panel's analysis rests on a demonstrably faulty premise: that statutory interpretation begins by consulting applicable caselaw.[49] In fact, as *Dorozkho I* properly recognized,[50] the cardinal tenet of statutory interpretation is that construction both starts and ends – absent grievous ambiguity – with the text of the operative statute itself.[51]

**Second**, the text of Rule 10b-5(b) juxtaposes and equates affirmative misrepresentations and material omissions or nondisclosures,[52] treating them as coterminous and qualitatively synonymous for purposes of securities fraud liability. Thus, far from supplying a textual basis to distinguish the two, the rule's plain language contradicts if not precludes any effort to do so. If omission liability requires a fiduciary-type breach, as even the *Dorozkho II* panel acknowledged, it follows that liability for affirmative misrepresentations does as well.

**Third**, language aside, settled law further belies the artificial distinction the *Dorozkho II* panel tried to draw. In *Santa Fe Indus. v. Green*, a 45-year-old case the panel conspicuously

---

[49] 574 F.3d at 46 ("[i]n construing the text of any federal statute, we first consider the precedents that bind us as an intermediate appellate court").

[50] 606 F. Supp. 2d at 327 ("As in all cases involving statutory interpretation, the appropriate starting point is the text of the statute itself.") (citing *Cent. Bank of Denver v. First Interstate Bank of Denver*, 511 U.S. 164, 172-73 (1994), *superseded by statute on other grounds as stated in SEC v. Fehn*, 97 F.3d 1276, 1280 (CA9 1996)).

[51] *Ibid.* ("In addressing the elements of a cause of action under Section 10(b) and Rule 10b-5, we turn first to the language of § 10(b), for the starting point in every case involving construction of a statute is the language itself") (quoting *Ernst & Ernst v. Hochfelder*, 425 U.S. 185, 197 (1976)) (cleaned up) (additional citation and internal quotation marks omitted).

[52] By its terms, Rule 10b-5(b) makes it "unlawful for any person, directly or indirectly," to "make any untrue statement of a material fact or to omit to state a material fact" in "connection with the purchase or sale of any security."

10

ignored, the Supreme Court pointedly "defined 'deception' as proscribed in § 10(b) as the making of a material misrepresentation *or* the non-disclosure of material information *in violation of a duty to disclose*."[53]

**Fourth**, beyond confounding law and language, any § 10(b) distinction between misrepresentations and omissions also defies simple common sense. Take the conduct charged here. Remotely impersonating a filing agent employee – virtually passing yourself off as that individual – may be one man's affirmative misrepresentation but another's material omission – *i.e.*, failing to disclose the digital masquerade. They're two sides of the same functional coin. Similarly, while contending the former constitutes an affirmative misrepresentation and thus an actionable deception, the Second Circuit concedes uncertainty whether alternate, equally blameworthy forms of hacking – for example, using malware or SQL injection[54] to exploit a weakness in electronic code and gain unauthorized access – would qualify under its idiosyncratic rationale.[55] A coherent, logical, administrable statutory scheme does not pin liability on arbitrary labels, semantic abstractions or the technical means a hacker happens to choose to infiltrate a protected computer. Especially when liability carries the risk of years in prison.

**Fifth**, speaking of years in prison, the *Dorozkho II* panel hastened to qualify the duty-free, deception-as-insider-trading theory it improvised, pregnantly confining its unique approach to the "facts presented" and deeming them "sufficient to maintain a civil enforcement action."[56] Even if

---

[53] *Dorozkho I*, 606 F. Supp. 2d at 330 (citing 430 U.S. 462, 470 (1977)) (emphasis supplied).

[54] According to the *Khalupsky* panel, SQL injection is a technique that enables intruders to "glean the architecture of [a] hacked computer system, identify vulnerabilities, and extract data." 5 F.4th at 291.

[55] *See Dorozhko II*, 574 F.3d at 50-51; *Khalupsky*, 5 F.4th at 291.

[56] 574 F.3d at 49-50 n.6.

*Dorozkho II* were defensible as a *sui generis* outlier (and it isn't), it by no means follows that the *Khalupsky* panel appropriately imported its solitary spin wholesale into the criminal context 12 years later – much less summarily, without explanation, examination or analysis, in a single unsupported sentence.[57] After all, while § 10(b) may be construed "flexibly to effectuate its remedial purposes"[58] in the civil setting, it is fundamental that penal laws are "construed strictly."[59] And when a statute has both criminal and civil application, the Supreme Court recently reiterated, it must be interpreted uniformly.[60]

**Sixth**, in the latter vein, it bears emphasis that the undefined, "amorphous term 'deceptive device,'" as used in § 10(b), is at least "ambiguous."[61] And the SEC, in the many years before or since *Dorozkho II*, has never exercised its congressionally delegated authority to promulgate a rule declaring hacking-and-trading simpliciter – without a corresponding duty breach – prohibited securities activity.[62] This hiatus starkly contrasts with Rule 14e-3(a), a 1980 provision targeting tender offer fraud that shows the SEC clearly knows how to jettison any fiduciary requirement –

---

[57] *See* 5 F.4th at 290 & n.30.

[58] *Dorozhko II*, 574 F.3d at 47.

[59] *E.g.*, *U.S. v. Smith*, 500 F.3d 27, 32 n.5 (CA1 2007); *cf.* Antonin Scalia & Bryan A. Garner, *Reading Law: The Interpretation of Legal Texts* 364-66 (2012) (denouncing, as an "open invitation to engage in 'purposive' rather than textual interpretation," the "false notion that remedial statutes should be liberally construed").

[60] *Sessions v. Dimaya*, 138 S. Ct. 1204, 1217 (2018).

[61] *U.S. McGee*, 763 F.3d 304, 313-15 (CA3 2014) (citing *Chiarella*, 445 U.S. at 226); *cf. Zandford*, 535 U.S. at 819-20 (dubbing § 10(b) "ambiguous").

[62] *Cf.*, *e.g.*, 17 CFR § 240.10b5-2(b) (clarifying the circumstances giving rise to a "duty of trust or confidence" following *O'Hagan*'s recognition of misappropriation liability); 15 U.S.C. § 78t(e) (amending Act to abrogate *Cent. Bank* and restore SEC's ability to sue individuals for knowingly aiding and abetting securities fraud).

in language the world will understand – when it wants to.[63] The "tie" therefore should have "go[ne] to the defendant" in the criminal context,[64] the rule of lenity – the "familiar principle"[65] that "ambiguity concerning the ambit of criminal statutes should be resolved in favor of lenity"[66] – counseling rejection, not extension, of *Dorozkho II*'s duty-less hack-and-trade concoction in *Khalupsky*.

**Seventh**, this conclusion rings doubly true in the circumstances at hand. Note here that *Khalupsky* was not decided until July 2021, well after the end of the conduct charged in counts One and Four, Klyushin's arrest and the pending indictment's return. To that point, "no federal court" in almost 90 years' experience with the Act had "*ever* held that those who steal material nonpublic information and then trade on it" *criminally* "violate § 10(b)."[67] As such, and especially without an SEC rule addressing the issue, Klyushin had no reason to suspect – and certainly could not have known – that hacking a computer to extract valuable trading information, whether by impersonating an employee or any other means, could trigger penal liability and years of prison for securities fraud *in the absence of a fiduciary relationship or similar duty of trust and confidence*.

---

[63] As *O'Hagan* explained, Rule 14e-3(a) "creates a duty to disclose material non-public information, or abstain from trading in stocks implicated by an impending tender offer, *regardless of whether such information was obtained through a breach of fiduciary duty*." 521 U.S. at 667-70.

[64] *U.S. v. Santos*, 553 U.S. 507, 514 (2008).

[65] *Skilling v. U.S.*, 561 U.S. 358, 410-11 (2010).

[66] *Yates v. U.S.*, 574 U.S. 528, 547-48 (2015).

[67] *Dorozkho I*, 606 F. Supp. 2d at 339.

Because § 10(b) has already been found ambiguous[68] – and otherwise fails to "define the criminal offense with sufficient" precision for "ordinary people" to "understand" – Klyushin thus lacked prior inkling or notice that the pre-*Khalupsky* behavior ascribed to him amounted to criminally "prohibited" insider trading.[69] As interpreted after-the-fact by the panel in *Khalupsky* and the government here, the Act therefore raises serious "vagueness concerns"[70] and "encourage[s] arbitrary and discriminatory enforcement,"[71] offending due process, violating the Fifth Amendment and arguably rendering it unconstitutional as applied to Klyushin.[72]

To alleviate these substantial concerns, basic principles of statutory construction – not just the rule of lenity, but also the canons favoring avoidance of both difficult constitutional questions and constitutionally doubtful constructions[73] – call for dismissing Count Four along with Count One's corresponding securities fraud object. This is especially so because larceny by false pretenses, the gist of the conduct the government dresses up as securities fraud, is a traditional state law crime. And Congress does not disrupt significantly the delicate balance between "federal

---

[68] *E.g.*, *McGee*, 763 F.3d at 313-15.

[69] *Kolender v. Lawson*, 461 U.S. 352, 357 (1983).

[70] *U.S. v. Scott*, 979 F.3d 986, 993 (CA2 2020).

[71] *Lawson*, 461 U.S. at 993.

[72] Put differently, since Klyushin lacked advance notice that Rule 10b-5 criminally prohibits trading on hacked information without a fiduciary breach, he could not have violated it *knowingly* or *willfully*. *See* 15 USC § 78ff(a) ("no person shall be subject to imprisonment under this section for the violation of any rule or regulation if he proves that he had no knowledge of such rule or regulation"); *O'Hagan*, 521 U.S. at 665-66 ("To establish a criminal violation of Rule 10b-5, the [g]overnment must prove that a person 'willfully' violated the provision.").

[73] *See, e.g.*, *U.S. v. Davis*, 139 S. Ct. 2319, 2332-33 & n.6 (2019).

and state criminal jurisdiction" without a "clear statement" of intent to do so.[74] Nothing in § 10(b) or Rule 10b-5(b) offers any such indication.

**E.     CONCLUSION**

A remedy without an incremental wrong and a solution in search of a problem, the unconventional hack-and-trade theory of stock fraud floated in this case fills a phantom enforcement gap amply covered by the wire and computer fraud statutes.[75] Improperly substituting dictionary definitions for a well understood term of art – § 10(b) "deception"[76] – and eradicating stock fraud's linchpin – breach of a fiduciary or similar duty of trust and confidence – the government's maximalist position upends decades of settled precedent and drastically expands federal prosecutorial power. A study in "overdeterrence"[77] and a recipe for "overcriminalization,"[78] it makes inside traders out of every common thief whose ultimate goal is securities profit.

Because this extreme approach lacks any basis in – indeed flatly contradicts – controlling law, the Court should dismiss Count Four and Count One's corresponding stock fraud object for

---

[74] *Bond v. U.S.*, 572 U.S. 844, 858-59 (2014); *cf. Santa Fe Indus.*, 430 U.S. at 478-80.

[75] Indeed, 18 USC §§ 1348-49, statutes carrying 25-year maximum penalties, also appear to prohibit the conduct at issue. *See* Nagy, 94 Iowa L. Rev. at 1322 n.29.

[76] Compare *Dorozkho I*, 606 F. Supp. 2d at 330 n.8 with *Dorozkho II*, 574 F.3d at 50, 51.

[77] *Ruan v. U.S.*, 142 S. Ct. 2370, 2378 (2022) (Breyer, J.).

[78] *Yates*, 574 U.S. at 569 (Kagan, Scalia, Kennedy and Thomas, JJ., dissenting).

failure to charge cognizable § 10(b) violations.[79] Any other outcome, as one commentator aptly noted, is an invitation to "revisionism and results-oriented decisionmaking."[80]

## COMPLIANCE WITH LOCAL RULE 7.1(a)(2)

Counsel for the government has indicated that it opposes this request.

        Respectfully Submitted,
        Vladislav Klyushin,
        By His Attorney,

**/s/ Maksim Nemtsev**
Maksim Nemtsev, Esq.
Mass. Bar No. 690826
20 Park Plaza, Suite 1000
Boston, MA 02116
(617) 227-3700
menemtsev@gmail.com

**/s/ Marc Fernich**
Marc Fernich
Law Office of Marc Fernich
800 Third Avenue
Floor 20
New York, NY 10022
212-446-2346
Email: maf@fernichlaw.com

Dated: September 20, 2022

---

[79] Since the filing agents are alleged theft victims not claimed to have committed any principal § 10(b) violation, Klyushin cannot be held liable under Count Four for aiding and abetting securities fraud.

[80] Nagy, 94 Iowa L. Rev. at 1320-21.

## CERTIFICATE OF SERVICE

I, Maksim Nemtsev, hereby certify that on this date, September 20, 2022, a copy of the foregoing documents has been served via Electronic Court Filing system on all registered participants.

**/s/ Maksim Nemtsev**
Maksim Nemtsev, Esq.