UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| UNITED STATES OF AMERICA )<br>)<br>v.                                     )<br>)<br>VLADISLAV KLYUSHIN        )<br>          Defendant              )<br>                                            ) | CRIMINAL NO. 21-cr-10104-PBS |

**DEFENDANT VLADISLAV KLYUSHIN'S REPLY TO THE GOVERNMENT'S OPPOSITION TO HIS MOTION TO DISMISS COUNT IV AND TO PARTIALLY DISMISS COUNT I**

Now comes the defendant Vladislav Klyushin, by and through undersigned counsel, and hereby respectfully submits this reply to the government's opposition to his motion to dismiss the indictment's stock fraud charges.

The government's opposition to the underlying motion is notable for what it leaves unsaid – and thus uncontested.

For starters, the government implicitly allows that a bevy of other federal criminal laws – including those addressing wire and computer fraud – comfortably fit the conduct alleged in the indictment.[1] And it asserts no inadequacy in the penalties they prescribe, especially in conjunction with the pending civil enforcement action the Securities and Exchange Commission has launched against Klyushin.[2]

Equally telling, the government tacitly concedes, by its inability to dispute, that *no* federal criminal statute or SEC rule expressly or unambiguously prohibits larceny by false pretenses, a

---

[1] *Cf.* Dkt. 100 at 14.

[2] *See ibid.* 13.

classic state law offense, just because it somehow touches securities – the nub of the absolutist position the government test drives in this case.

Finally, the government likewise admits, again by freighted silence, that the duty-free theory of stock fraud liability it ventures here lacks any basis in controlling authority.

In a futile bid to deflect the vagueness, notice and due process implications flowing from these confessions, the government instead resorts to a string of flimsy diversions.

At the outset, the government couches its novel hack-and-trade theory as falling within the "heartland" of "established" precedent.[3] That embellishes things significantly. Three judges on one appellate panel in a single circuit backed the theory in a stray civil case. Well after Klyushin's indictment, another three-judge panel from the same court uncritically imported it wholesale into the criminal context – without confronting the distinct vagueness, notice and due process considerations prevailing there – in a lone cursory sentence. At the same time, another veteran judge from the same circuit rebuked the theory in a thorough, scholarly opinion. That hardly counts as an "established" consensus – much less one placing hack-and-trade in the "heartland" of securities fraud.

Needless to say, none of the rulings just mentioned bind this Court. The Court is free to rebuff *Dorozkho II*'s[4] and *Khalupsky*'s[5] attempts to defend hack-and-trade, shunning them as unpersuasive. And they are, for the reasons discussed in the moving papers. Without rehashing those reasons here, the defense efforts rest largely on the fallacy – perpetuated in the government's

---

[3] *Ibid.* 4, 10, 15 (cleaned up). All internal citations, alterations, quotation marks and other punctuation are omitted unless otherwise indicated.

[4] *SEC v. Dorozkho*, 574 F.3d 42 (CA2 2009).

[5] *U.S. v. Khalupsky*, 5 F.4th 279 (CA2 2021), *cert. denied*, 142 S. Ct. 761 (2022).

opposition – that federal securities law tracks and incorporates common law fraud. It does not,[6] as even the government recognizes elsewhere in its memo.[7]

All of this is true even if *Dorozkho II* and *Khalupsky* come from what the government extols as the nation's "preeminent court for securities law."[8] After all, the Supreme Court *reversed* the Second Circuit in the seminal case in this area,[9] *rejecting* the idea that federal securities law broadly prohibits exploitation of "any structural advantage in information that was wrongly obtained" – even in the absence of a fiduciary-like breach.[10] As at least one jurist and several academics – not just one law student, as the government fancies[11] – have observed, hack-and-trade "essentially seek[s] to revive" or "resurrect" that discredited view, effectively "extend[ing] § 10(b) liability to any situation" where information is stolen or otherwise illicitly acquired.[12] Nor was *Chiarella* the last time the Supreme Court had to rein in the Second Circuit's expansive interpretation of federal penal statutes[13] – including those related to securities fraud.[14]

---

[6] *Compare* Dkt. 100 at 7, 9-10, 12 *with* Dkt. 96 at 3 & n.9, 7 & n.35.

[7] *See* Dkt. 100 at 5-6 (citing and quoting *SEC v. Zandford*. 535 U.S. 813, 819-20 (2002)).

[8] Dkt. 100 at 10 & n.3.

[9] *See Chiarella v. U.S.*, 445 U.S. 222 (1980).

[10] *SEC v. Dorozkho*, 606 F. Supp. 2d 321, 333-34 (SDNY 2008).

[11] *Compare* Dkt. 100 at 11 & n.4 *with* Dkt. 96 at, *e.g.*, 3 & n.11, 5 & n.18, 6 & nn. 26, 30, 7 & nn. 34, 36, 8 & n.39, 12 & n.59, 15 & n.75, 16 & n.80.

[12] *Dorozkho I*, 606 F. Supp. 2d at 333-34, 336 & n.10.

[13] *See, e.g.*, *Marinello v. U.S.*, 138 S. Ct. 1101 (2018); *Sekhar v. U.S.*, 570 U.S. 729 (2013); *cf. Ciminelli v. U.S.*, 142 S. Ct. 2901 (2022); *Percoco v. U.S.*, 142 S. Ct. 2901 (2022).

[14] *See Salman v. U.S.*, 580 U.S. 39 (2016), *abrogating U.S. v. Newman*, 773 F.3d 438 (CA2 2014).

Conversely, it makes no difference, as the government trumpets, that the Supreme Court denied certiorari in *Khalupsky*.[15] A cert denial "imparts no expression of opinion on the merits of a case"[16] and axiomatically lacks "precedential value."[17] Indeed, the *Khalupsky* denial is particularly unsurprising given the ultra-rarity of the government's theory – especially in criminal prosecutions – and the issue's resultant "insufficient development … among the lower courts."[18] And it's even more unsurprising where the *Khalupsky* cert petition entirely eschewed the vagueness, notice and due process arguments advanced in the opening papers.[19]

At any rate, contrary to the government's supposition,[20] the Court need not determine that *Dorozkho II* – or even *Khalupsky* – was wrongly decided for Klyushin to win. It need only find the question presented close enough to implicate the familiar construction canons – unique to criminal cases though conspicuously overlooked in *Khalupsky* – collectively directing that "the tie must go to the defendant."[21] Those canons include not just the rule of lenity, but also the doctrines of constitutional doubt and avoidance and the clear statement rule.[22] The government, like the

---

[15] *See* Dkt. 100 at 1, 9.

[16] *U.S. v. Carver*, 260 U.S. 482, 490 (1923) (Holmes, J.).

[17] *Teague v. Lane*, 489 U.S. 288, 296 (1989).

[18] *Ibid.*

[19] *See* Petition for a Writ of Certiorari in *Korchevsky v. U.S.*, No. 21-580, 2021 WL 4918121, at *i, *8-*9, *23-*33 (Oct. 18, 2021).

[20] Dkt. 100 at 1 (mischaracterizing our motion as asserting that without a fiduciary breach, using "affirmative misrepresentations to steal material non-public information is not 'deceptive' conduct" under the securities fraud statute "as a matter of law"); *id.* at 4 (mischaracterizing our motion as contending that the conduct alleged does not violate § 10(b) "*as a matter of law*").

[21] *U.S. v. Santos*, 553 U.S. 507, 514 (2008).

[22] *See* Dkt. 96 at 12-15.

*Khalupsky* panel, completely ignores these "venerable"[23] tenets save an instant of "semantic games[manship]," to borrow a phrase,[24] around the lenity rule.[25]

Having studiously elided key interpretive canons, the government falls back on the trope that § 10(b) "should be construed not technically and restrictively, but flexibly to effectuate its remedial purposes."[26] But whether or not that dubious proposition[27] appropriately obtains in civil cases, it defies the criminal law maxim that penal laws are "construed strictly."[28] That much inheres in the cited sentence's very use of the word "remedial," the legal antonym of "punitive."[29]

---

[23] *Santos*, 553 U.S. at 514.

[24] *See* Dkt. 100 at 13-14.

[25] *See ibid.* 14-15. The government's parenthetical string citation to *U.S. v. Hunt*, a non-binding district court opinion from another circuit, proves too much. *See* Dkt. 100 at 15-16 (citing No. 05 CR. 395 (DAB), 2006 WL 2613754, at *8-*9 (SDNY Sept. 6, 2006)). While the defendant there "was on notice that his conduct was wrongful because it violates NYSE rules" (*id.* [internal quotation marks omitted]), the government implicitly concedes – as it must – that no SEC rule expressly prohibits hacking a computer to extract valuable trading information – whether by impersonating an employee or any other means – in the absence of a fiduciary relationship or similar duty of trust and confidence. *See* Dkt. 96 at 12-13. *U.S. v. Bongiorno*, another out-of-circuit district court case string cited at page 15 of the government's memo, misses the mark for similar reasons – "defendants' alleged actions constitute[d] clear violations of NYSE rules" – and because the dispute there centered on whether a fiduciary-like duty *existed*, not whether one was *required*. No. 05 Cr. 390 (SHS), 2006 WL 1140864, at *7, *9 (SDNY May 1, 2006), *reconsideration in part denied*, 2006 WL 1559359 (SDNY Jun. 5 2006).

[26] Dkt. 100 at 5.

[27] *Contra* Antonin Scalia & Bryan A. Garner, *Reading Law: The Interpretation of Legal Texts* 364-66 (2012) (denouncing, as an "open invitation to engage in 'purposive' rather than textual interpretation," the "false notion that remedial statutes should be liberally construed").

[28] *E.g.*, *U.S. v. Smith*, 500 F.3d 27, 32 n.5 (CA1 2007).

[29] *See, e.g.*, *U.S. v. Ursery*, 518 U.S. 267, 278-79 (1996).

Unsurprisingly, then, the trope appears nowhere in either *O'Hagan*[30] or *Chiarella*,[31] the Supreme Court's leading criminal stock fraud cases. And again, a statute with both criminal and civil application must be interpreted uniformly.[32]

Shifting gears, the government insists that punishing hack-and-trade under § 10(b) is "no more idiosyncratic" than hinging federal fraud liability on the use of "an interstate wire."[33] Not so. To begin, interstate wire use is a jurisdictional element, whereas this motion concerns § 10(b)'s substantive scope. And to the extent § 1343 liability *does* turn on interstate wire use, it's because Congress – a representative branch of government, charged with making the law, that's democratically accountable to the electorate – says it does. In contrast, neither representative branch – not Congress through its legislative power, and not the Executive through the rulemaking authority delegated to the SEC – has chosen to penalize as insider trading any state law larceny by false pretenses that somehow touches securities. Instead, the government asks members of the judiciary, unelected and eluding popular accountability, to do the work of the representative branches and make up the law for them. Vagueness, notice and due process considerations aside, that approach also raises separation of powers concerns.

---

[30] *U.S. v. O'Hagan*, 521 U.S. 642, 651 (1997).

[31] Underlining our point, a variant of the trope actually crops up in a *Chiarella* **dissent**, meaning the majority *rejected* its application in the criminal setting. *See* 445 U.S. at 246-47 (Blackmun and Marshall, JJ., dissenting) (accusing Court of failing to "square" its "ruling with the long-standing but *now much abused* principle that the federal securities laws are to be construed flexibly rather than with narrow technicality") (citations omitted) (emphasis supplied).

[32] *See* Dkt. 96 & n.60; *Sessions v. Dimaya*, 138 S. Ct. 1204, 1217 (2018).

[33] Dkt. 100 at 14.

In a glancing footnote, the government also accuses Klyushin of "omit[ting] to note" Judge Buchwald's expression of "disturb[ance]" that Dorozkho's case "was not a federal prosecution."[34] The claim is a red herring. Klyushin's case *is* a federal prosecution. And all agree that wire and computer fraud are properly charged, both substantively and conspiratorially. The question before the Court is a narrow one: whether the conduct alleged is also properly chargeable as securities fraud – substantive and conspiratorial – in the circumstances presented.

Finally, the government cites no authority for its odd suggestion that the 2015 *Khalupsky* indictment and 2017 sentence – presumably per guilty plea[35] – of a defendant in a "companion case" somehow provided advance notice, adequate to satisfy due process, that the conduct attributed to Klyushin criminally violates federal securities law.[36] Once again, the failure is unsurprising. After all, an indictment is not an adjudication. It is not even evidence, as juries are routinely instructed. And as the saying goes, a prosecutor can indict a proverbial ham sandwich.

As for the unnamed defendant in the unidentified companion case, the government does not describe the individual's conduct or say what s/he pleaded guilty to. And even in the unlikely event it happened to be securities fraud, the plea was a decision personal to that defendant. It was *not* a judicial determination, after adversarial testing, that securities fraud was properly charged.

The bottom line? *Khalupsky* was not decided until July 2021, well after the end of the conduct charged in counts One and Four, Klyushin's arrest and the pending indictment's return.

---

[34] *Ibid.* 15 n.8.

[35] *Compare ibid.* 14 n.6 (referencing an unspecified 2017 Reuters report that a defendant in a *Khalupsky* "companion case" received a 30-month prison sentence) *with Khalupsky*, 5 F.4th at 287 (noting that appellants Khalupsky and Korchevsky were convicted after trial in Jul. 2018 and subsequently received four- and five-year sentences, respectively).

[36] *See* Dkt. 100 at 14 n.6, 16.

To that point, "no federal court" in almost 90 years' experience with the Act had "*ever* held that those who steal material nonpublic information and then trade on it" *criminally* "violate § 10(b)."[37] As such, and especially without an SEC rule addressing the issue, Klyushin had no reason to suspect – and certainly could not have known – that hacking a computer to extract valuable trading information, whether by impersonating an employee or any other means, could trigger penal liability and years of prison for securities fraud *in the absence of a fiduciary relationship or similar duty of trust and confidence.*

It follows, for the reasons urged in our moving papers and amplified here, that the Court should dismiss Count Four and Count One's corresponding stock fraud object for failure to charge cognizable § 10(b) violations.

Respectfully Submitted,

Vladislav Klyushin,
By His Attorneys,

**/s/ Maksim Nemtsev**
Maksim Nemtsev, Esq.
Mass. Bar No. 690826
20 Park Plaza, Suite 1000
Boston, MA 02116
(617) 227-3700
menemtsev@gmail.com

**/s/ Marc Fernich**
Marc Fernich
Law Office of Marc Fernich
800 Third Avenue
Floor 20
New York, NY 10022
212-446-2346
Email: maf@fernichlaw.com

Dated: October 11, 2022

---

[37] *Dorozkho I*, 606 F. Supp. 2d at 339.

## CERTIFICATE OF SERVICE

    I, Maksim Nemtsev, hereby certify that on this date, October 11, 2022, a copy of the foregoing documents has been served via Electronic Court Filing system on all registered participants.

                                        **/s/ Maksim Nemtsev**
                                        Maksim Nemtsev, Esq.