UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| UNITED STATES OF AMERICA<br><br>v.<br><br>VLADISLAV KLYUSHIN,<br>  a/k/a "Vladislav Kliushin"<br>IVAN ERMAKOV,<br>  a/k/a "Ivan Yermakov," and<br>NIKOLAI RUMIANTCEV,<br>  a/k/a "Nikolay Rumyantsev,"<br><br>        Defendants | 21-cr-10104 (PBS) |

MOTION IN LIMINE TO ADMIT STATEMENTS OF THE DEFENDANT

The government respectfully requests that the Court permit it to offer into evidence a statement of the defendant in a WhatsApp communication to one of his investors (Exhibit Y), as well as a photograph attached to and referenced in that communication (Exhibit X). The government seeks to show the photograph to the jury as part of its opening statement.

The exhibits are relevant and probative of the defendant's close relationship with his co-conspirator, Ivan Ermakov, and of their relationship with two of their investors, Boris Varshavskiy and Sergey Uryadov, as well as Klyushin's and Ermakov's involvement in the charged hack-to-trade conspiracy. The exhibits also rebut the defense that Ermakov did not work at the defendant's company, M-13. The exhibits pose no danger of unfair prejudice, as the defense contends, much less to an extent that substantially outweighs their probative value and requires their exclusion. Fed. R. Evid. 403. As the First Circuit has repeatedly held, employing Rule 403 to exclude probative evidence "must be cautious and sparing" because trials should not "be conducted on

scenarios, on unreal facts tailored and sanitized for the occasion." *See, e.g.*, *United States v. Rivera*, 83 F.3d 542, 547 (1st Cir. 1996).

## BACKGROUND

On August 27, 2020, during the charged conspiracy, the defendant exchanged the following WhatsApp messages with Varshavskiy—one of the men whose money Klyushin and Ermakov were investing in exchange for a 60 percent cut of the profits:

| | |
|---|---|
| KLYUSHIN: | Only you, the investor, is missed here. |
| VARSHAVSKIY: | Are all of these yours? |
| KLYUSHIN: | Uryadov, Ivan, and two that are mine. |
| VARSHAVSKIY: | 😂 |
| KLYUSHIN: | stopped by for a visit today |
| KLYUSHIN: | delivered to all of us at the same time |
| VARSHAVSKIY: | Beautiful. |

Appended to the first message was the following photograph, showing four matching cars parked in front of an open garage.



Klyushin's messages make clear that the cars belong to himself, Ermakov, and another one of their investors, Uryadov, and were "delivered to all of us at the same time." The one car belonging to Ermakov and the two belonging to Klyushin have matching vanity license plates with the number 13—the number of Klyushin's company, M-13:

  

Likewise, Klyushin's statement to Varshavskiy, "Only you, the investor, is missed here," is a reference to the trading success that Klyushin and Ermakov enjoyed with the money supplied by Uryadov and Varshavskiy.

ARGUMENT

Klyushin's messages and the accompanying photograph are admissible as statements of the defendant, and Varshavskiy's responses are as well because they are both non-hearsay (a question, an emoji, and the exclamation "Beautiful"), and because they provide context for Klyushin's statements. The messages are probative of the close relationship between Klyushin and Ermakov and the fact that that relationship is related to M-13's trading. They are also probative of the fact that Ermakov had a formal employment relationship with M-13—a fact that the defense has disputed.

First, "the existence of a close relationship between a defendant and others involved in criminal activity can, as a part of a larger package of proof, assist in supporting an inference of involvement in illicit activity." *United States v. Rodriguez-Soler*, 773 F.3d 289, 294-95 (1st Cir. 2014) (affirming admission of photos suggesting "an intimacy of association", a factor 'which, with others, [can] [rather quickly add up to circumstantial proof' of criminality") (quoting *United*

3

*States v. Ortiz*, 966 F.2d 707, 714 (1st Cir. 1992)).  Here, the evidence of Klyushin's tight relationship with Ermakov is particularly probative where Klyushin has requested an instruction that—while objectionable—lays bare a theme of the defense: that he can be "friendly with a criminal without being a criminal himself." (Dkt. 141 at 7).  Klyushin's messages and the accompanying photograph, which document the simultaneous purchase of matching cars with customized license plates, shows something far more than two men who were simply "friendly" with each other.

Second, the exhibits also rebut a defense that Klyushin has raised in his motions in limine—that Ermakov was not employed by M-13.  Indeed, Klyushin's first marked exhibit, Exhibit AD, purports to be a Russian Ministry of Finance record stating that Ermakov was "not an employee of LLC 'M-13'" between 2018 and 2020.  The delivery of a car with a "13" vanity license plate—a plate that only Klyushin and Ermakov (but not the investor Uryadov) share—suggests that Ermakov did, in fact, have a formal employment relationship with M-13, and helps rebut the defense's attempt to minimize the relationship and all but erase Ermakov from this case.  *See United States v. Hope*, 608 F. App'x 831, 838–39 (11th Cir. 2015) (affirming admission of defendant's "luxury purchases," partly on the ground that "[t]he wealth evidence was … relevant to rebutting [defendant] Hope's defenses to the charges"); *see also United States v. Kessi*, 868 F.2d 1097, 1101-07 (9th Cir. 1989) (noting use of evidence of purchases that demonstrated wealth to rebut a defense).

Third, the exhibits are also probative of the connection among Klyushin, Ermakov, M-13, the investors, and the securities trading that lies at the heart of the charged hack-to-trade conspiracy.  The photo and messages are fairly read as commemorating the men's extraordinarily profitable trading—trading that the Indictment alleges was illegal.  The exhibits suggest that

Klyushin was celebrating his and Ermakov's successful investments—much like a Super Bowl-winning quarterback might buy matching Rolex watches for the linemen on his team. The point is not that the quarterback is rich, but that he did something exceptional with his teammates.

Finally, the defense objects to the photograph under Rule 403, contending that because the cars are Porsches, the photograph is unfairly inflammatory. But the fact that Klyushin is wealthy will already be obvious to the jury from evidence—offered by *both* the government *and* the defense—that Klyushin owned his own company with hundreds of employees and made more than $20 million trading securities. *See United States v. Bradley*, 644 F.3d 1213, 1272 (11th Cir. 2011) ("a reasonable jury would have suspected long before the 'wealth evidence' was presented that the [defendants] were financially well-off"). The government does *not* propose to offer the exhibits as evidence of Klyushin's wealth, but as evidence of conspiracy, and of the nature and evolution of the defendant's relationship with his closest co-conspirator and their investors. The government will offer nothing more than "matter of fact statements" that the four cars were delivered at the same time, with matching vanity plates on three of them—the kind of statements that have survived Rule 403 analysis in the First Circuit. *See*, *e.g.*, *United States v. Alcantara*, 837 F.3d 102, 107 (1st Cir. 2016) ("nothing particularly inflammatory" about "matter-of-fact statements" that the defendant was known for driving a Bentley or that he drove a Lexus on certain occasions). Put simply, in a case where there is going to be no dispute that the defendant and his associates turned $9 million into *$90 million* through securities trading, the risk that the jury will convict the defendant of hacking and securities fraud because the cars he bought were six-figure Porsches, as opposed to five-figure Mercedes or four-figure used cars, approaches zero.

Finally, even if the photograph were somewhat prejudicial because the cars are expensive, Rule 403 nonetheless requires its admission. *See United States v. Soler-Montalvo*, 44 F.4th 1, 16

5

(1st Cir. 2022) ("it is not enough for Rule 403 that the evidence's dangers of unfair prejudice . . . *somewhat* outweigh the probative value of the evidence") (emphasis added); *Bradley*, 644 F.3d at 1271 ("we have said that balance usually 'should be struck in favor of admissibility' because 'exclusion under Rule 403 is so drastic a remedy.'").  As the First Circuit and other courts have recognized, the application of Rule 403 to exclude relevant evidence "must be cautious and sparing."  *United States v. Zeuli*, 725 F.2d 813, 817 (1st Cir. 1984); *accord Rivera*, 83 F.3d at 547; *United States v. Grant*, 256 F.3d 1146, 1155 (11th Cir. 2001) ("Rule 403 is extraordinary remedy whose 'major function . . . is limited to excluding matter of scant or cumulative probative force . . .'"); *United States v. Dodds*, 347 F.3d 893, 897 (11th Cir. 2003) ("trial court's discretion to exclude relevant evidence under Rule 403 should be exercised with recognition that exclusion is extraordinary and to be invoked sparingly, with trial court striking the balance in favor of admission in most cases").  Any minimal danger of prejudice that arises from the fact that Klyushin, Ermakov, and Uryadov drove Porsches falls far short of substantially outweighing the exhibits' probative value and requiring their exclusion.

## CONCLUSION

For these reasons, the Court should overrule the defendant's objections, rule the exhibits are admissible, and permit the government to refer to them in its opening statement.

Respectfully submitted,<br>
RACHAEL S. ROLLINS<br>
United States Attorney<br>
<br>
By: /s/ Seth B. Kosto<br>
STEPHEN E. FRANK<br>
SETH B. KOSTO<br>
Assistant U.S. Attorneys

Date:   January 29, 2023