UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| UNITED STATES OF AMERICA<br><br>v.<br><br>VLADISLAV KLYUSHIN,<br>  a/k/a "Vladislav Kliushin"<br>IVAN ERMAKOV,<br>  a/k/a "Ivan Yermakov," and<br>NIKOLAI RUMIANTCEV,<br>  a/k/a "Nikolay Rumyantsev,"<br><br>             Defendants | 21-cr-10104 (PBS) |

GOVERNMENT'S STATEMENT OF SUPPLEMENTAL AUTHORITY
CONCERNING FED. R. EVID. 803(6)

The government's most direct evidence that the 104 IP Addresses were located in Boston is Exhibit 140: a series of invoices concerning these and other IP addresses across several months sent from Micfo to Stackpath. Stackpath's Chief Accounting Officer has attested under penalty of perjury that these documents satisfy the requirements of Fed. R. Crim. P. 803(6)(A) through (C). (Certificate of Authenticity, Exhibit A hereto). The defendant does not dispute the invoices' authenticity or the fact that Stackpath paid the invoices upon receiving them, in part, for Boston IP addresses. The Court risks legal error and directing an acquittal if it precludes the jury from accepting the invoices for what they are: several among hundreds of reliable records of regularly conducted activity. And it creates the same risk if it admits the invoices but instructs the jury that they may not consider the invoices—business records that satisfy Rule 803(6) and are therefore excluded from Rule 802's prohibition on hearsay—"for their truth."

As an initial matter, it bears keeping in mind that courts have "adopted a generous view of the business records exception, construing it to favor the admission of evidence if it has any probative value at all." *See, e.g.*, *United States v. Strother*, 49 F.3d 869, 874 (2d Cir. 1995) (cleaned up).  It follows that if the conditions of Rule 803(6)(A)-(C) are satisfied, which they indisputably are by the Stackpath business records certification here, and the defendant does not satisfy his burden to demonstrate a lack of trustworthiness under Rule 803(6)(E), the record is "admissible to prove *the facts recited in it*."  2 McCormick On Evid. § 286 (8th ed.) (emphasis added).

It is well-settled that an invoice can be a business record of a company that receives it for a product or service rendered.  For example, an invoice maintained by a Massachusetts sports shop, for a firearm received by that sports shop, is a business record of that store, even though the invoice was generated by a company in South Carolina that sold the gun to the Massachusetts store.  *See United States v. Doe*, 960 F.2d 221, 222-23 (1st Cir. 1992).  And as then-Judge Breyer held in *Doe*, a firearms prosecution, the invoice of the recipient store was a business record admissible to prove that the gun did in fact travel in interstate commerce, sent from the South Carolina company and marked "received" by the sports shop in Massachusetts.  *Id.* at 223.  As the court reasoned in rejecting the defendant's hearsay challenge to the invoice:  "the fact that the [hearsay evidence] . . . had earlier been the record of a different business . . . is irrelevant. Because it was relied upon by the [current testifying party], the . . . record was integrated into the records of the [testifying party], along with the additional handwritten notation." *Id.* at 224.  So too here: the invoice Stackpath received from Micfo is a business record of Stackpath that is admissible to prove it purchased an IP address, what that IP address was, and that it was in Boston.

The First Circuit's decision in *Doe* is not an outlier; indeed, it is consistent with the Fifth Circuit's decision in *Flom* that the government provided to the Court this afternoon at sidebar. *See United States v. Flom*, 558 F.2d 1179, 1182 (5th Cir. 1977) (holding that invoices "prepared and sent by another company" were admissible under Rule 803(6) as business records of recipient company). It is also consistent with other First Circuit precedent, and appellate precedent across circuits. *See, e.g.*, *United States v. Moore*, 923 F.2d 910, 914 (1st Cir. 1991) (adequate business records foundation laid by head of bank's consumer loan department for loan histories requested from an outside service bureau); *accord Int'l Mgt. Assocs. v. Perkins,* 781 F.3d 1262, 1268 (11th Cir. 2015) (explaining that as long as proponent presented "enough circumstantial evidence to establish the trustworthiness of the underlying documents, he did not need to present testimony from the person who actually prepared them"); *United States v. Childs*, 5 F.3d 1328, 1333 (9th Cir. 1993) ("Several circuits have held that exhibits can be admitted as business records of an entity, even when that entity was not the maker of those records . . . ."); *United States v. Pfeiffer*, 539 F.2d 668, 671 (8th Cir. 1976) (admitting invoices and delivery receipts without custodian from the companies that prepared and sent them to the recipient); *see also United States v. Mendel*, 746 F.2d 155, 166 (2d Cir. 1984) ("Although an employee of the preparing business normally lays the foundation required by Rule 803(6), no such employee need testify when circumstances otherwise demonstrate trustworthiness. . . ."); *United States v. Miller*, 771 F.2d 1219, 1237-38 (9th Cir. 1985) (affirming admission of computer-generated billing records and telephone records from outside sources, even though recipients did not participate in their preparation, because evidence was presented that the businesses receiving these records relied upon these records in conducting their business and had an interest in verifying their accuracy).

The remaining question is whether defendant has met his burden of "show[ing] that the source of information or the method or circumstances of preparation indicate a lack of trustworthiness." Fed. R. Evid. 803(6)(E). Rule 803(6) was amended in 2014 specifically to "clarify that if the proponent has established the stated requirements of [Rule 803(6)(A)-(C)] . . . then the burden is on the opponent to show that the source of information or the method or circumstances of preparation indicate a lack of trustworthiness." *Id.*, Advisory Committee Notes. "The opponent's showing of untrustworthiness must be specific and credible." *United States v. Smith-Kilpatrick*, 942 F.3d 734, 742 (6th Cir. 2019); *United States v. Razo*, 2013 WL 653957, at *2 (D. Me. Feb. 21, 2013) ("[a]n opponent who believes that the declarant has not established a sufficient foundation will have to present evidence that demonstrates the failure.") (*quoting* Weinstein's Federal Evidence, § 902.13[1] (2d ed. 2012)). Here, the defendant has offered only the fact that Micfo was convicted for conduct entirely unrelated to invoicing or failing to deliver IP addresses that it promised. He has, accordingly, failed to meet that burden.

To the contrary, the universe of records establishes that all of the parties involved with the 104 IP Addresses were acting consistently with the contents of the invoices.

<u>First</u>, ARIN—the non-profit entity that controls the distribution of IP addresses in North America—recorded the assignment of the 104 IP Addresses to Stackpath's subsidiary—Strong Technology, LLC—for use at 1 Summer Street, Boston, Massachusetts. (Exhibit 176, Exhibit B hereto).

<u>Second</u>, Web2Objects, the company to which ARIN initially assigned the 104 IP Addresses, issued a written authorization for Micfo to install these IP addresses on a computer in Boston, Massachusetts. (Exhibit 145, Exhibit C hereto).

4

Third, Markley Boston, the company that controlled a data center here in Boston, leased that space to Micfo, pursuant to a written contract to provide space, power, and internet connectivity for the installation of computers. (Exhibit 145, Exhibit D hereto).

Fourth, Markley took a picture of Micfo's server on September 13, 2018. The picture includes a sticker labeling server number 7—the very server described in the Micfo invoices. (Exhibit 142C, Exhibit E hereto).

Fifth, Micfo, for its part, issued not one but several invoices to Stackpath referencing the 104 IP Addresses in Boston, as well as invoices for IP addresses assigned to other cities, including Denver and Cleveland. The invoices span from November 24, 2018—just a few weeks after the 104 IP Addresses were used as alleged in the Indictment—all the way through August 31, 2019. (Exhibit 140, Exhibit F hereto). Notably, Micfo was indicted in May 2019, and yet the invoices for the 104 IP Addresses continued, which further confirms the lack of any relationship between Micfo's indicted conduct and these invoices. There is also no dispute that Stackpath paid for the 104 IP Addresses, surely an indication (if not proof) that Stackpath got what it paid for.

Sixth, even beyond the trial exhibits, the Court should consider that personnel at Stackpath behaved as if the IP addresses described in Exhibit 140 were actually in use. On October 24, 2018, a Stackpath employee named Justin Basciao wrote to Web2Objects—the ultimate lessor of the 104 IP Addresses—requesting that Web2Objects update the location information for the 104 IP Addresses to "Boston, MA". (Exhibit G hereto). Web2Objects wrote back to Stackpath a few weeks later, confirming the 104 IP Addresses' location in Boston. (Exhibit H hereto).

Taken together, it is difficult to imagine more indications of trustworthiness. All of the businesses involved in these transactions—ARIN, Web2Objects, Stackpath, Micfo, and Markley—acted exactly as businesses would under the circumstances described in the invoices.

To suggest that all five entities would have acted this same way even if the 104 IP Addresses were not actually located in Boston defies common sense.

Micfo's records—what it billed Stackpath for—are integrated into the business records of Stackpath and must be admitted. A ruling otherwise would permit the defendant to present location evidence based on the hearsay contents of Toppan Merrill's business records (as it has already), while precluding the government from doing the same with Stackpath's business records (which integrate records from Micfo).

The invoices are admissible for all purposes, and the defendant's arguments to the contrary go to weight, not admissibility. The defense is certainly permitted to argue, for example, that the date range of the invoices does not cover the correct time period; that the invoice is not proof that the work was done; and that the government accordingly has not met its burden. If the Court permits Exhibit 140 in evidence and then emphasizes to the jury that it may <u>not</u> consider the record as evidence that the 104 IP Addresses were in Boston, it will be effectively directing the jury to acquit.

## CONCLUSION

For these reasons, the Court should admit Exhibit 140 pursuant to Fed. R. Evid. 803(6)(A)-(E) for all purposes.

Respectfully submitted,
RACHAEL S. ROLLINS

United States Attorney

By: /s/ Seth B. Kosto
STEPHEN E. FRANK
SETH B. KOSTO
Assistant U.S. Attorneys

Date:   February 1, 2023