UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| UNITED STATES OF AMERICA<br><br>v.<br><br>VLADISLAV KLYUSHIN,<br>  a/k/a "Vladislav Kliushin,"<br><br>       Defendant | 21-cr-10104 (PBS) |

GOVERNMENT'S RESPONSE IN OPPOSITION TO DEFENDANT'S MOTION TO
PRECLUDE TESTIMONY OF ADITI SHAH

Faced with overwhelming evidence of his guilt, the defendant seeks to mislead the jury about whether venue is proper in this district—even though the evidence is incontrovertible that it is. When the government initially sought to prove venue through geolocation evidence, the defense challenged that evidence on the eve of trial as unreliable (only to seek to introduce the same sort of evidence once trial started). When the government then sought to introduce invoices demonstrating that a Boston IP address was used as part of the scheme, the defense sought to cast the invoices as unreliable because the company that prepared them was convicted of an unrelated fraud. Now, confronted with a percipient witness who actually directed an internet service provider to route traffic to the Boston IP address, the defense seeks to exclude her testimony as well, claiming unfair "surprise."

The defendant's contention that he will be unfairly prejudiced by 15 minutes of testimony from a venue witness is meritless, and the caselaw he cites does not support his effort to exclude her testimony. To the contrary, the First Circuit has approved the practice of allowing the government to *re-open* its case *after* a Rule 29 motion to address venue for the first time. And that

ruling makes sense, since, as Judge O'Toole has noted, it is unclear in this Circuit whether venue must even be reserved for the jury.[1]

Background

Having never challenged venue pre-trial in accordance with Fed. R. Crim. P. 12(b)(3)(A)(i), when the defense first raised venue as an issue, shortly before trial, it was in the context of an objection to evidence the government sought to offer from MaxMind, a geolocation service. Contending that "[t]his sort of evidence has well known reliability problems," the defense sought to preclude it absent a threshold proffer "that would establish the reliability and trustworthiness of such geolocation services." Dkt. 119 at 10-11. On January 5, 2023, the Court reserved on the issue subject to a *Daubert* hearing that was ultimately conducted on January 18, 2023. At that hearing, the government indicated its intent to prove venue using other evidence, including invoices from a company called Micfo establishing that the relevant IP address was located in Boston at the relevant time.

Thereafter, the defense sought to challenge the reliability of the Micfo invoices—which were indisputably business records—on the basis that Micfo had been convicted of an unrelated fraud. The government promptly objected to this line of attack, and the Court reserved on the issue but instructed the defense not to discuss the Micfo conviction in opening. On Thursday, February 2 (the fourth day of trial), the Court ruled that the defense *would* be permitted to ask the government's case agent about Micfo's conviction. *See* 2/2/23 Trial Tr. at 14. That same day, the government was able to locate, for the first time, a former Micfo employee who instructed a third-

---

[1] *See United States v. Carpenter*, 405 F. Supp. 2d 85, 90 (D. Mass. 2005), *aff'd in part, appeal dismissed in part*, 494 F.3d 13 (1st Cir. 2007) (reaffirming decision not to present venue to the jury and noting "that there was no genuinely disputable factual issue upon which the resolution of the venue issue depended").

party internet service provider to direct internet traffic to the Boston server. The government immediately produced a page-and-a-half FBI 302 report of the interview to the defense and disclosed its intention to call the witness to testify the following week.[2]

## Argument

The introduction of testimony from a witness who does not appear on a witness list is hardly novel, and "the decision to admit the testimony is within the discretion of the trial judge." *United States v. Cruz*, 156 F.3d 22, 30 (1st Cir. 1998) (cleaned up) (allowing government to introduce testimony from witness who did not appear on its pre-trial list); *see also United States v. Reis*, 788 F.2d 54, 58 (1st Cir. 1986) (same).

In the context of venue specifically, courts regularly permit the government to *re-open* its case after resting to introduce such evidence, and multiple circuits—including the First Circuit—have explicitly approved this practice. *See*, *e.g.*, *United States v. Cordero*, 668 F.2d 32, 44 (1st Cir. 1981) ("in an appropriate case the trial judge has been allowed to reopen the case to allow proof of venue"); *United States v. Troupe*, 307 F. App'x 715, 717 (4th Cir. 2008) (affirming decision to permit the government to re-open its case-in-chief to establish proper venue after defendant moved for judgment of acquittal); *United States v. Blankenship*, 775 F.2d 735, 740 (6th Cir. 1985) ("Reopening is often permitted to supply some technical requirement such as the location of a crime—needed to establish venue. . . ."); *United States v. Hinderman*, 625 F.2d 994,

---

[2] In the meantime, the defense has repeatedly sought to introduce exactly the sort of geolocation evidence it previously sought to exclude as unreliable, on the basis that it was recorded in logs maintained by the victim filing agent. It has also indicated that it may seek to introduce such evidence though an expert witness, even though according to the disclosure for the expert witness it has noticed, the witness will testify that "IP geolocation services are not always accurate and reliable," and are "significantly less accurate at identifying locations at the city and state level than the country level."

996 (10th Cir. 1980) (same); *cf. United States v. Leslie*, 103 F.3d 1093, 1104 (2d Cir. 1997) (affirming decision to permit government to re-open its case to prove interstate commerce element of crime because "it is a simple matter, like venue or the identification of the defendant, and a district court may allow the government to reopen its case to establish this jurisdictional predicate").[3]

This practice is hardly surprising, because "[d]espite its basis in the Constitution, venue in the criminal context continues to occupy a lesser station in the hierarchy of constitutionally-derived rights." *United States v. Perez*, 280 F.3d 318, 328 (3d Cir. 2002). Indeed, as Judge O'Toole has noted, in the First Circuit, "[c]ases that refer to venue as an 'element' of the offense seem to recognize that it is actually more like an isotope; it is not exactly like the other real, or 'substantive,' elements." *Carpenter*, 405 F. Supp. 2d at 89.

In this case, there can be no serious dispute that venue is proper in the District of Massachusetts. Notwithstanding that fact, the defense has sought first to exclude evidence of venue, and more recently to cast doubt on the reliability of invoices that establish it, on the basis of the unrelated conviction of the company that issued them.

On Thursday, after the Court ruled on that issue, the government located a witness who is able to confirm that she personally directed an internet service provider to direct internet traffic to the Boston server. The government's failure to locate this witness previously was not for lack of

---

[3] The cases the defendant cites are not to the contrary. As an initial matter, none of them concerns venue. One—*United States v. Taylor*, 71 F. Supp. 2d 420 (D.N.J. 1999)—is entirely inapposite because it concerns unnoticed expert testimony. And in *United States v. Gasparik*, 141 F. Supp. 2d 361 (S.D.N.Y. 2001), the court did *not* preclude the government from calling the disputed witness in rebuttal—despite the fact that he had not been identified on the government's pre-trial witness list—and reaffirmed that "the decision whether to admit the testimony of a witness not included on the Government's witness list lies within the sound discretion of the Court." *Id*. at 366, 368 (*citing Cruz*, 156 F.3d at 29).

diligence—the moment venue became an issue in the few weeks before trial, the government sought to locate a percipient witness who could testify about it. This task was made more difficult by the fact that the relevant witness was a relatively junior employee of a company that has been defunct for several years. Accordingly, the government could not have included the witness on its witness list any earlier than it did, because it did not know of her existence, nor did it have any genuine reason to believe the defense had a good faith basis to challenge venue.

The witness, Aditi Shah, is now in Massachusetts, having traveled here from North Carolina. Contrary to the defendant's contention, her testimony is not complicated. She will testify for less than 15 minutes on direct examination, confirming the content of Exhibit 267, an email chain reflecting that she directed Cogent, an internet service provider, to route internet traffic to the relevant IP address on a Micfo server in a data center in Boston, and that Cogent confirmed it had done so. She will further testify that her practice, in such circumstances, was to verify that internet traffic was flowing properly to Micfo's servers at the data centers where they were housed.

The defense contends that it will be unfairly prejudiced by such testimony because it advised the jury in opening that no Micfo witness would testify "that they took that IP address and placed it on one of their servers in Boston." Dkt. 176. But that is not true. As an initial matter, the government's witness list—filed pursuant to an agreed-upon schedule one week before trial—specifically notified the defendant that the government "reserves the right to amend and/or supplement this list with reasonable notice to the defendant." Dkt. 156 at 1. Moreover, in light of the defense opening, the government would—under any circumstances—be justified in presenting a Micfo witness as part of a rebuttal case. And that is particularly true where, as here, the defense has been permitted to impeach Micfo's invoices on the basis of the company's unrelated criminal

5

conviction, notwithstanding the Court's finding that the invoices and related documents bear sufficient indicia of reliability.  *See* 2/2/23 Trial Tr. at 12.  The defense made several overstatements in its opening—from declarations that there would be "no evidence" on many issues and even challenging jurors to consider the prospect of an American being extradited to Russia to stand trial after making trades in the United States.  *See* 1/3/23 Trial Tr. at 85.  The government should not be penalized for those statements.  Indeed, it would be counterintuitive to exclude actual admissible evidence because a party claimed such evidence contradicted something they said that is *not* evidence (an opening statement).

In short, the defense should not be allowed to mislead the jury about the reliability of Micfo's invoices, and to cast doubt on whether venue is proper in Boston, when venue is not seriously open to question, and especially given venue's "lesser station in the hierarchy of constitutionally-derived rights."  *Perez*, 280 F.3d at 328.  Indeed, the Court may well be justified in such circumstances in removing venue entirely from the jury's consideration, insofar as there is no "genuinely disputable factual issue upon which the resolution of the venue issue depend[s]." *Carpenter*, 405 F. Supp. 2d at 90.  But if the defense is permitted to press the issue, the government must be permitted to put the true facts before the jury.  And the witness who has now flown here from North Carolina should not be required to return home, and then back to Boston to testify at the end of trial, rather than simply testifying now as part of the government's case-in-chief.

For all these reasons, the defendant's motion should be denied.

         Respectfully submitted,

         RACHAEL S. ROLLINS
         United States Attorney

By: */s/ Stephen E. Frank*
     STEPHEN E. FRANK
     SETH B. KOSTO
     Assistant U.S. Attorneys

Date:  February 5, 2023