UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

———————————————————————
                                              )
                                              )
UNITED STATES OF AMERICA       )
                                              )
v.                                           )          No. 21-cr-10104-PBS
                                              )
VLADISLAV KLYUSHIN,             )
Defendant                              )
                                              )
——————————————————————  )

## RESPONSE TO FORFEITURE AND RESTITUTION REQUESTS

Now comes the defendant Vladislav Klyushin, by and through undersigned counsel, and hereby respectfully responds to the government's Motion for Forfeiture, Dkt. 242, and DFIN and TM's restitution requests. PSR at ¶ 211.

### I.    Forfeiture

Pursuant to its forfeiture request, the government seeks to forfeit "a total amount of proceeds obtained by the Defendant of at least $36,600,000 USD." Dkt. 242 at 3. The government's figure is based on its assertion that Mr. Klyushin "obtained $20,902,031 USD in total profit from the trading offenses"; that "his company, M13, obtained $1,880,502 USD in total profit from the trading offenses"; and that "the Defendant obtained a share of his investors' profits." *Id.* The government asserts that Mr. Klyushin "obtained ***up to 60%*** of the profit from the profits of his three investors," but uses the 60% figure exclusively to calculate its forfeiture amount. *Id.* (emphasis added). The defense respectfully contends that government's forfeiture calculations are erroneous in several respects:

1

First, the government assumes that every single earnings-based transaction in TM and DFIN stock was based on material non-public information. As detailed in Mr. Klyushin's sentencing memorandum, however, there was no evidence that every transaction by Mr. Klyushin or his investors in a DFIN or TM serviced entity (which serviced the largest publicly traded companies in the United States), were based on material non-public information. Sentencing Memorandum at 15-16. Indeed, Mr. Klyushin's and his investors' accounts purchased and sold stocks serviced by various Filing Agents, made transactions not surrounding any earnings events, and made transactions in DFIN and TM serviced entities long after intrusions ceased. *Id.* The government theorized at trial that an overlap in stock transactions between Mr. Klyushin and his investors and those of Mr. Sladkov and Mr. Irzak indicates the transactions were based on material non-public information. However, Mr. Klyushin and Mr. Sladkov's trading overlapped only approximately 58% of the time and Mr. Klyushin and Mr. Irzak's trading overlapped only approximately 52% of the time. *Id.* It is the government's burden to prove forfeitability, but there was simply no evidence that every transaction in a DFIN or TM serviced entity surrounding an earnings event was based on material non-public information. *United States v. Cunan*, 156 F.3d 110, 116 n.7 (1st Cir. 1998) ("In a criminal forfeiture … the government must show by a preponderance of the evidence that the defendant's property is forfeitable"). Similarly, the government's calculations include appreciation of investments well after information was made public. *See* Sentencing Memorandum at 17.

Second, assuming *arguendo* that the government meets its burden, the $36,600,000 calculation is still inconsistent with the facts of this case. For example, prior to January 2020, Mr. Klyushin received only 50% of profits from investor trading, *i.e.,* for the bulk of the charge

conspiracy period he received less than the 60% split the government uses for its calculation. The use of 60% throughout its calculation, based on the defense's estimates, improperly increases the forfeiture amount by at least $1,669,116.

Third, the government's forfeiture calculation fails to consider any direct cost incurred by Mr. Klyushin. *See United States v. Contorinis*, 692 F.3d 136, 145 (2d Cir. 2012) ("The definition of proceeds for insider trading violations is 'the amount of money acquired through the illegal transactions resulting in the forfeiture, less the direct costs incurred in providing the goods or services.'") (internal citation omitted); *United States v. Nacchio*, 573 F.3d 1062, 1088 (10th Cir. 2009) ("[Defendant] should be required to forfeit his net profit, rather than the gross proceeds, of his insider trading offenses."). Indeed, the $36,600,000 calculation fails to consider any costs, including, for example, the $560,789.88 paid in commissions to broker-dealers for facilitating transactions.

## II. Restitution

The defense respectfully submits that not all of TM and DFIN's losses qualify for restitution under the MVRA. 18 U.S.C. § 3663A(b)(4) allows the court to issue an order of restitution to "reimburse the victim for lost income and necessary child care, transportation, and other expenses incurred during participation in the investigation or prosecution of the offense or attendance at proceedings related to the offense." The nature of the expenses claimed by TM and DFIN, however, namely all its legal fees, forensic expert fees, crisis management fees, vendor fees, are outside the scope of the relevant subsection of the restitution statute.

Specifically, TM submitted the following breakdown of its expenses in connection with its incident response and its expenses associated with assisting the government:

| Categories of Expenses | Incident Response Expenses | Government Assistance Expenses | Total Expenses |
|---|---|---|---|
| Legal Fees | $376,504.55 | $690,562.39 | $1,067,066.94 |
| Forensic Expert Fees | $317,332.26 | $33,283.34 | $350,615.60 |
| Crisis Management Fees | $88,323.56 | $97,806.32 | $186,129.88 |
| Vendor Contracts | $72,732.60 | $29,687.34 | $102,419.94 |
| Internal Toppan Merrill Time | $92,691.00 | $149,698.00 | $242,389.00 |
| Total | $947,583.97 | $1,001,037.39 | $1,948,621.36 |

PSR at ¶51. While TM attached invoices in connection with the services that it paid for, all the legal invoices and many of the other invoices are redacted. *See* July 17, 2023, Letter from Akin Gump at Exhibit C, Exhibit D, and Exhibit E.

Similarly, DFIN submitted the following breakdown of expenses to probation:

| Categories of Expenses | Incident Response Expenses | Government Assistance Expenses | Total Expenses |
|---|---|---|---|
| DFIN Internal Expenses (Executive and IT employees and government witnesses) | $1,325,000 | $339,309 | $1,664,269 |
| Forensic Consulting Expenses | $2,299,148 | $643,118 | $2,949,266 |
| Outside Legal Counsel Expenses | $588,319 | $1,134,839 | $1,723,158 |
| Total | $4,212,467 | $2,117,266 | $6,336,693 |

PSR at ¶52. DFIN, however, failed to provide any invoices (legal or otherwise) to support its restitution requests. *See* July 19, 2023, Letter from PerkinsCoie.[1] In sum, both entities are seeking a combined $8,285,314.36 in restitution. PSR at ¶212.

---

[1] On June 23, 2022, during an interview with the government, DFIN disclosed that it submitted at least some of these expenses to its insurance carrier for payment. The defense is not aware of whether any or all these expenses were covered by insurance. The defense has no information regarding whether TM submitted any claims to its insurance carriers, but such information is relevant to determining the appropriate restitution amount and the proper recipients of restitution.

In the first instance the lack of documentation, either because it was redacted or not submitted, makes it impossible for the Court or the defense to assess the claimed expenses and make any determination of whether they are properly recoverable as restitution. *United States v. Avenatti,* 2022 WL 452385, at *3 (S.D.N.Y. Feb. 14, 2022) ("The billing records submitted in support of the application have been redacted in such a way to make it impossible to determine whether the fees sought fall within the recoverable categories as set forth in *Lagos v. United States*, 138 S. Ct. 1684 (2018)."). Indeed, DFIN and TM's submissions make it impossible to determine whether, for example, fees were billed for legal research, generating memoranda, summarizing motion practice, drafting press releases, and other expenses that courts have ruled unrecoverable. *See e.g., United States v. Hatfield*, No. 06-CR-0550 (JS)(AKT), 2015 WL 13385926, at *13 (E.D.N.Y. Mar. 27, 2015)) (denying restitution for legal fees for "attendance at proceedings, reviewing trial transcripts, generating memorand[a] and summaries of motion practice, and drafting press releases").

Furthermore, the Supreme Court recently had occasion to construe the same subsection – 18 U.S.C. § 3663A(b)(4) – applicable to restitution in this case. *See Lagos v. United States*, 138 S. Ct. 1684 (2018). The issue in *Lagos* was whether the statutory terms "investigation" and "proceedings" "are limited to government investigations and criminal proceedings, or whether they include private investigations and civil proceedings." *Id.* at 1687. The Court ultimately adopted the former, narrower reading. In reaching this result, the Court observed that the subsection "lists three specific items that must be reimbursed, namely, lost income, child care, and transportation; and it then adds the words, 'and other expenses.' Lost income, child care expenses, and transportation expenses are precisely the kind of expenses that a victim would be

likely to incur when he or she (or, for a corporate victim . . . , its employees) misses work and travels to talk to government investigators, to participate in a government criminal investigation, or to testify before a grand jury or attend a criminal trial. At the same time, the statute says nothing about the kinds of expenses a victim would often incur when private investigations, or, say, bankruptcy proceedings are at issue, namely, the costs of hiring private investigators, attorneys, or accountants." *Id.* at 1688 (emphasis added) (citation omitted). Thus, applying the *noscitur a sociis* canon of statutory construction, meaning "that statutory words are often known by the company they keep," the Court found "both the presence of company that suggests limitation and the absence of company that suggests breadth." *Id*. at 1688-89. Lagos also noted that a "broad reading" of the statute "would create significant administrative burdens." *Id.* at 1689. The recoverable expenses must be "necessary," and application of the statute to private investigations would "invite disputes" regarding the necessity of particular expenses which "may become burdensome in cases involving multimillion dollar investigation expenses for teams of lawyers and accountants." *Id*. "[O]ne begins to doubt whether Congress intended, in making this restitution mandatory, to require courts to resolve these potentially time-consuming controversies as part of criminal sentencing . . . ." *Id.*

Both the legal and pragmatic aspects of *Lagos*'s rationale are equally applicable to the issue presented here: whether "other expenses" may include legal fees, forensic fees, crisis management fees and related costs incurred during a government investigation and prosecution. The Fifth Circuit recently applied *Lagos* to find that "other expenses" did not include costs of a victim assisting the FBI in investigating an alleged hacker. In reaching this result, the court observed, "[i]t would be rather strange for the specific items in a list to be the kind of expenses

that a victim would be likely to incur when he or she . . . misses work, but then for the catchall

phrase of the same list to mandate restitution for digital forensic services. Think about it: The

costs of a babysitter, a tank of gas, a parking meter–and a 44-person digital security team."

*United States v. Koutsostamatis*, 956 F.3d 301, 306 (5th Cir. 2020) (citation omitted). "One of

these things is not like the others." *Id.* The Fifth Circuit relied on the same canon of construction

cited in *Lagos*: *noscitur a sociis*. *See id*. at 307. Indeed, the Supreme Court recently held that the

statutory word "expenses" did not include attorney's fees when read "alongside neighboring

words" in an unrelated statute. *Id.* (*citing Peter v. Nantkwest, Inc.*, 140 S. Ct. 365, 372 (2019)).

The Fifth Circuit additionally cited the cannon of *ejusdem generis*, which "limits general terms

which follow specific ones to matters similar to those specified." *Id.* at 308 (citation omitted).

Following that canon here, "restitution is required for 'lost income and necessary child care,

transportation, and other [similar] expenses.'" *Id*. In short, "[t]ext and context both counsel

against . . . expansive interpretation of 'other expenses'" that would include legal fees, forensic

expert fees, crisis management fees, and vendor fees like those at issue here. *Id*. at 309. As *Lagos*

itself recognized, the statute "says nothing about . . . the costs of hiring private investigators,

attorneys, or accountants." 138 S. Ct. at 1688.

Moreover, reading "other expenses" to include millions of dollars "for teams of lawyers

[, forensics, and PR professionals]" would lead to the very same "burdensome" disputes that the

*Lagos* Court sought to avoid. *Id*. at 1689. It is far from clear that several significant line items

from TM and DFIN's submission were "necessary" to TM and DFIN's participation in the

government's investigation and prosecution of Mr. Klyushin. To hold that such expenses, as a

class, may be "other expenses" (notwithstanding their lack of similarity to the other specific

types of expenses expressly mentioned in the same subsection) would inevitably require courts to wade into an intricate analysis of necessity.

Even leaving aside the broader principles of *Lagos*, a cursory review of TM and DFIN's submissions underscores that much of costs they incurred were unreasonable and thus unrecoverable, including the 2,526 hours attorney hours and 1,378 hours forensic hours DFIN spent assisting the government in its investigation and prosecution, Letter from PerkinsCoie at 4-5; the $186,129.88 TM spent on PR services (in part attributed to assisting government prosecutors); the hours TM spent responding to SEC subpoena unrelated to this case; the legal fees TM accrued after the conclusion of Mr. Klyushin's trial; the dinner expenses in New York;[2] minibar expenses; and other significant expenditures that the defense is unable to categorize as a result of the significant redactions or complete absence of records. Even the internal hours that were spent by both DFIN and TM directors and employees should not be calculated in the value of their work, but "what it would have cost [] to pay someone to perform the same work." *United States v. Schurman*, 2022 WL 5337746, at *5 (N.D. Cal. Oct. 7, 2022).

Accordingly, the defense respectfully requests this Honorable Court to deny much of the broad restitution requests.

---

[2] To counsel's knowledge, TM and its attorneys are not based in New York.

Respectfully Submitted,
Vladislav Klyushin,
By His Attorneys,

**/s/ Maksim Nemtsev**
Maksim Nemtsev, Esq.
Mass. Bar No. 690826
20 Park Plaza, Suite 1000
Boston, MA 02116
(617) 227-3700
menemtsev@gmail.com

**/s/ Marc Fernich**
Marc Fernich
Law Office of Marc Fernich
800 Third Avenue
Floor 20
New York, NY 10022
212-446-2346
Email: maf@fernichlaw.com

Dated: August 2, 2023

## CERTIFICATE OF SERVICE

I, Maksim Nemtsev, hereby certify that on this date, August 2, 2023, a copy of the foregoing documents has been served via Electronic Court Filing system on all registered participants.

**/s/ Maksim Nemtsev**
Maksim Nemtsev, Esq.