UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| UNITED STATES OF AMERICA ) | |
| ) | |
| v.                                                    ) | 21-cr-10104-PBS |
| ) | |
| VLADISLAV KLYUSHIN,                 ) | |
| ) | |
| Defendant.                ) | |

**GOVERNMENT'S RESPONSE CONCERNING FORFEITURE**

In his Response to Forfeiture and Restitution Requests (Dkt. No. 249), Defendant Vladislav Klyushin challenges the government's requested forfeiture amount, $36,600,000, in four respects: (1) that the evidence does not establish that each individual trade Klyushin profited from was based on material non-public information ("MNPI") stolen from the victim filing agents; (2) that the "government's calculations include appreciation of investments well after information was made public"; (3) that Klyushin more often received 50 percent, rather than 60 percent, of the illicit profits from his trading on behalf of three investors whose money he managed; and (4) that the forfeiture amount fails to account for commissions that Klyushin incurred while trading.

The government respectfully responds as follows:

1. Klyushin's Proceeds Were Based on Stolen MNPI

At trial, the government established that Klyushin's trading profits invariably came from the theft of MNPI. Klyushin had no brokerage account before joining the conspiracy. He traded in in the shares of clients of Toppan Merrill ("TM") only until TM locked the conspirators out of its network in January 2020. (Tr. Exh. 203). His trading (and that of his co-conspirators) then shifted exclusively to the shares of clients serviced by Donnelly Financial ("DFIN"), and he was successful only until DFIN locked the conspirators out of its network in or about August 2020. *Id.*

Based on available data, Klyushin's trading on the earnings announcements of DFIN-serviced companies followed the illegal download of data from DFIN one "hundred percent of the time". (Tr. Tr. 8-144—145). And once TM and DFIN had both secured their networks, Klyushin all but abandoned trading on earnings releases and began losing money. (PSR ¶ 42) ("[w]hen Klyushin and his coconspirators had unauthorized access to MNPI at DFIN and TIM, they traded around earnings events 78 percent of the time made more than $98 million on those trades. When they no longer had unauthorized access, they traded around earnings only 7 percent of the time, and lost more than $200,000—correctly predicting the direction of the market only 41 percent of the time. (Trial Chalk EEE).") This is ample evidence that Klyushin's trading profits came from stolen MNPI and are the proper object of the requested forfeiture order, particularly given the preponderance standard that governs the Court's determination at this stage of the proceedings.

    2.    <u>The Appreciated Value of Illegal Trades is Subject to Forfeiture</u>

Klyushin's argues incorrectly that forfeiture is not permitted for "appreciation of investments well after information was made public." (Dkt. 249 at 2). In fact, a defendant convicted of insider trading must forfeit both property "which constitutes proceeds" of the offense, 18 U.S.C. § 981(c), <u>and</u> property which is "derived from proceeds traceable" to the offense. "The plain text compels [the] conclusion that a defendant convicted of insider trading must forfeit the appreciation of funds acquired through illegal transactions in an insider-trading scheme, because such funds are "derived from proceeds traceable to the offense." *United States v. Afriyie*, 929 F.3d 63, 73 (2d Cir. 2019). The $36,600,000 in net profits attributable to Klyushin, M-13, and Klyushin's share of his three investors' profits are accordingly subject to forfeiture.[1]

---

[1] This forfeiture analysis differs from the Court's loss calculation, which is governed by *United States v. Chan*, 981 F.3d 39, 63 (1st Cir. 2020). *Chan*'s loss methodology calculates gain based on the price of illegally traded shares at the end of the first day following an earnings

3. <u>Klyushin's Share of his Investors' Profits</u>

In order to avoid an unnecessary dispute, the government accepts for purposes of forfeiture Klyushin's contention that he frequently took only 50 percent of the profits from the trading he directed on his investors' behalf. The net profits for the investors totaled $23,090,939: $12,454,502 for Borodaev, $8,611,350 for Uryadov, and $2,025,087 for Varshavskiy. Klyushin's share of this total, calculated at the 50 percent rate, is $11,545,469.50.

Klyushin is accordingly and conservatively accountable for $34,065,419.50 in trading profits. The government requests that the Court enter a forfeiture money judgment in that amount and a preliminary order of forfeiture for substitute assets (and submits proposed revised orders herewith). For the reasons stated below, Klyushin is not entitled to any further deduction for what he describes as his "direct costs".

4. <u>Klyushin is Not Entitled to an Offset for Direct Costs</u>

While it is true that forfeiture in an insider trading case *may* account for a defendant's direct costs, the burden is on Klyushin—not the government—to establish his direct costs. *See* 18 U.S.C. § 981(a)(2)(B) ("The claimant shall have the burden of proof with respect to the issue of direct costs."). Klyushin has put forth no evidence of his direct costs, other than citing approximately half a million dollars in broker commissions. *See United States v. Carpenter*, 941 F.3d 1, 10 (1st Cir. 2019) (district court did not err by not deducting direct costs where defendant did not provide any evidence to show direct costs).

But here, Klyushin stands convicted of far more than insider trading. A defendant convicted of wire fraud and computer intrusion offenses is not entitled to an offset of direct costs

---

announcement—*i.e.*, once the market had digested the announced MNPI. Because Klyushin's appreciated profits are "derived from proceeds" of his offense, *Chan*'s formula has no bearing on the Court's forfeiture determination.

3

from the forfeiture amount. Unlike insider trading, which "involve[es] lawful goods or lawful services that are sold or provided in an illegal manner," 18 U.S.C. § 981(a)(2)(B), the offenses of wire fraud or computer intrusion do not involve lawful goods or services, but inherently unlawful activities. *See United States v. Contorinis*, 692 F.3d 136, 145 n.3 (2d Cir. 2012) ("the sale of a security is not an inherently unlawful activity, like say the sale of foodstamps, or a robbery, and thus insider trading is not "unlawful activity" as that term is used in § 981(a)(2)(A)"). Accordingly, for purposes of wire fraud forfeiture, the definition of proceeds is contained in 18 U.S.C. § 981(a)(2)(A), which provides that "the term 'proceeds' means property of any kind obtained directly or indirectly, as the result of the commission of the offense giving rise to forfeiture, and any property traceable thereto, *and is not limited to the net gain or profit realized from the offense*." (emphasis added). And although forfeiture for computer intrusion is governed by 18 U.S.C. § 982(a)(2) and 18 U.S.C. § 1030(i)(2), neither of which defines "proceeds," it too is an inherently unlawful activity. Klyushin is thus not entitled to an offset for his direct costs from his forfeiture money judgment for computer intrusion or wire fraud. After all, "[f]orfeiture orders go beyond disgorgement of profits. They 'help to ensure that crime does not pay: [t]hey at once punish wrongdoing, deter future illegality, and 'lessen the economic power' of criminal enterprises.'" *Carpenter*, 941 F.3d at 10 (quoting *Kaley v. United States*, 571 U.S. 320, 323 (2014)).[2]

---

[2] Even if the Court allowed Klyushin $560,789.88 in direct costs from commissions, which it should not for the reasons stated above, it should still order forfeiture totaling $30,465,309.60.

4

The Court should accordingly allow the government's motion for forfeiture in the revised amount of $34,065,419.50.

Respectfully submitted,

JOSHUA S. LEVY
Acting United States Attorney

By: */s/ Seth B. Kosto*
STEPHEN E. FRANK
SETH B. KOSTO
Assistant U.S. Attorneys

Date:   September 5, 2023

## CERTIFICATE OF SERVICE

I hereby certify that a copy of this document will be sent electronically to the registered participants as identified on the Notice of Electronic Filing.

*/s/ Seth B. Kosto*
SETH B. KOSTO
Assistant U.S. Attorney

Date: September 5, 2023